UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

─────

ANDRE HAMILTON,

                    Plaintiff,                    Case No. 1:15-cv-963

v.                                              Honorable Janet T. Neff

DOUG WELTON et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.  Factual allegations

Plaintiff Andre Hamilton presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Maximum Correctional Facility (AMF), though the actions about which he complains occurred while he was housed at the Bellamy Creek Correctional Facility (IBC). He sues IBC Sergeant/Inspector Doug Welton, IBC Deputy Warden M. Macauley, and MDOC Central Office Security Threat Group Coordinators Brent Travelbee and Larry Brown.

Plaintiff alleges that, on May 29, 2013, he was involved in an altercation with another inmate, during which he repeatedly struck the other prisoner's head with a closed fist. Plaintiff was issued a misconduct ticket for assault and battery of a prisoner. He was placed in segregation pending the outcome of his disciplinary hearing. On the same day of the incident, Defendant Welton pulled Plaintiff out of his cell and placed him in a confined room. Welton berated Plaintiff about his conduct and threatened to "make Plaintiff pay" for embarrassing Welton, who had previously vouched for Plaintiff's placement in Level-IV housing.[1] (Compl., docket #1, PageID #12.) Welton threatened to have Plaintiff placed back on Security Threat Group (STG) II designation and sent to a Level-V, maximum-security facility.[2] Plaintiff protested that placement on STG-II designation was not appropriate, however, because the altercation was not related to gang activities. Welton replied, however, that the truth did not matter, because his report would say it was gang-related, and

---

[1]In the MDOC, security classifications, from least to most secure, are as follows: Levels I, II, IV, V, and administrative segregation. MDOC POLICY DIRECTIVE 05.01.130 ¶ B (Oct. 10, 2011). There are two types of segregation: administrative segregation and punitive segregation. MDOC POLICY DIRECTIVE 04.05.120 ¶¶ L, U (Sept. 27, 2010).

[2]Plaintiff does not dispute that, at the time of Defendant Welton's threat, Plaintiff already was designated as STG-I, as he was a leader of the Five Star Elite of the Vice Lords. Nor does he dispute the other findings in the STG-II reclassification report completed by Welton, several of which could have led to his classification as STG-II. (*See* Ex. 1 to Compl., docket #1-1, PageID ##38-39.)

Defendants Travelbee, Brown and Macauley would "go with whatever [Welton] said."  Two days later, before Plaintiff's hearing on his misconduct ticket for fighting, Defendant Welton issued a document indicating that Plaintiff had been found guilty of a gang-related misconduct and, as a result, was deemed to be a threat to the safety of the staff and prisoners at the facility.  Plaintiff complains that the document was false, because he had not yet been found guilty of the misconduct and the misconduct ticket did not involve gang-related activity.  On June 6, 2013, Plaintiff attended a hearing on his misconduct ticket for assault and battery, where he pleaded guilty.  No facts were introduced to indicate that the fight had anything to do with gang-related activities.  Indeed, no supplemental information was presented to the hearings officer, other than the misconduct ticket itself.  The hearings officer sanctioned Plaintiff with 30 days' segregation.

After the hearing, Plaintiff was placed before the Security Classification Committee, which consisted of Defendant Macauley, Assistant Resident Unit Supervisor Nevins, and a member of the Psychiatric Team.  Defendant Macauley asked Plaintiff about the altercation and what drove Plaintiff to assault the other inmate.  Plaintiff explained that he had been pushed over the edge and snapped.  Macauley noted that the inmate victim had a history of goading other inmates into fights. The committee went through Plaintiff's institutional file, noted that Plaintiff had been misconduct free for a lengthy period, determined that he could be managed safely in general population rather than administrative segregation, and planned to return Plaintiff to the general population after he had served his detention sanction.

When Plaintiff returned to his cell, Defendant Welton was waiting for him.  Welton sneeringly asked how the hearing went.  Plaintiff told Welton that he had received good news from the committee.  Welton then informed Plaintiff that his recommendation for STG-II designation had

been immediately approved by Defendants Travelbee and Brown, and the designation was final on May 31, 2013.  Later that evening, Plaintiff received a copy of the STG-II Identification form. Plaintiff complains that, among the boxes checked on the form, one box falsely indicated that Plaintiff had been found guilty of an STG-related misconduct.

Plaintiff immediately wrote a grievance against Defendant Welton, seeking relief from the "false" designation, which stated that he had been convicted of an STG-related misconduct five days before he had even had a hearing on his misconduct ticket.  Plaintiff also wrote an urgent letter to Macauley, advising him of the same issue.  The next day, June 7, 2013, Defendant Macauley moved Plaintiff to administrative segregation, in preparation for Plaintiff's transfer back to Level-V.  Plaintiff filed a second grievance, this time against Defendants Macauley, Travelbee and Brown.  Also, on June 9, 2013, Plaintiff sent a second, detailed letter to Defendants Travelbee and Brown, pleading with them to look at the documents showing that Welton's report of Plaintiff's conviction was falsified, because it was dated prior to his conviction, and that Welton was engaged in a personal vendetta against Plaintiff.

On June 11, 2013, Defendant Welton had Plaintiff taken to an empty office unit, placed him in a locked cage, and began to harass Plaintiff about the grievance Plaintiff filed against Welton.  Welton then reviewed Plaintiff on the grievance, in violation of MDOC policy.  Welton informed Plaintiff that his grievance was futile, and he advised Plaintiff that any discrepancies would be explained as inadvertent mistakes.  Defendant Welton told Plaintiff, "You made me look bad, I made you look worse . . . You fucked me, so I fucked you."  (*Id.* at 21.)  After the incident with Welton, Plaintiff filed yet another grievance, complaining that Welton had committed gross violations of policy, had obstructed Plaintiff's access to the grievance process, and had harassed

Plaintiff, in violation of Plaintiff's rights to due process and equal protection and the right to petition government.

On June 12, 2013, Plaintiff was packed up for transfer to Level V at AMF, 12 hours away from Ionia. The unit supervisor told Plaintiff that he was being sent all the way to Baraga, rather than across the street, because Plaintiff had "pissed off" Defendant Welton. (*Id.* at 22.) When he arrived at AMF, the AMF security classification committee decided, based on the STG-II designation, to place Plaintiff in administrative segregation, where he remained for 10 months. Plaintiff complains that he did not receive his property for five days, and he therefore could not even change his underwear for that period. In addition, Plaintiff complains that, during the transfer, much of his paperwork and his typewriter were lost, and his television was damaged.

On June 24, 2013, Plaintiff received mailed copies of the responses to the grievances he had written against Defendants Welton, Travelbee and Brown. Plaintiff noted that Defendant Welton had personally investigated and responded to both grievances. As he promised, Welton explained away discrepancies as inadvertent errors or misstatements. On June 26, 2013, Plaintiff received a response to his third grievance by the grievance coordinator, who rejected the grievance as duplicative. Plaintiff thereafter filed grievance appeals to both Step II and Step III, all of which were unavailing. Plaintiff also filed a formal complaint against Welton to the MDOC Internal Affairs Division.

Plaintiff contends that Defendant Welton deprived him of his rights to due process, equal protection and redress of grievances and retaliated against him for filing grievances. Plaintiff also alleges that Welton's actions violated the Michigan constitution and breached Welton's oath of public office. Plaintiff alleges that Defendants Macauley, Travelbee and Brown were deliberately

-5-

indifferent to Welton's abuse and failed in their duties to investigate and reject Welton's allegations, despite the obvious inconsistencies of those allegations.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Due Process

Plaintiff contends that he was denied due process when Defendant Welton made false representations on the STG form and Defendants Travelbee and Brown signed that form. He asserts that Travelbee and Brown should have been aware of Welton's falsehood, since the STG-II form was completed prior to Plaintiff receiving a hearing on the misconduct ticket. Plaintiff further complains that he was transferred to a higher security facility and placed in segregation without due process. He also alleges that he was deprived of his right to due process by Defendants' violations of various MDOC policies. Further, he contends that some of his property was lost or damaged, ostensibly in violation of his right to due process. Finally, he complains that Defendant Welton interfered with his grievances.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a

procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

### 1.    Violation of prison policy and Michigan constitution

Plaintiff alleges that Defendants violated a number of MDOC policies in their handling of his reclassification and transfer and in the handling of his grievances. He also alleges that Defendants' conduct violated the Michigan constitution.

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's

assertion that Defendants violated the state constitution and prison policy therefore fails to state a claim under § 1983.

## 2. Security classification and transfer

Plaintiff argues that Welton falsely accused him of being involved in a gang-related fight, thereby justifying his being elevated to an STG-II status and being transferred from a Level-IV to a Level-V facility.  The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification.  *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).  The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges.  *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement).  Plaintiff's designation as a "Security Threat Group Member" is nothing more than a security classification used by the prison.  Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a due process claim based on his STG-II classification and his assignment to Level-V confinement.

Moreover, prisoners do not have a constitutional right to be incarcerated in any particular institution. *See Meachum v. Fano*, 427 U.S. 215 (1976).  The Supreme Court has held repeatedly that the ability to transfer prisoners is essential to prison management, and that requiring

hearings for such transfers would interfere impermissibly with prison administration. *Id.*; *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Montanye v. Haymes*, 427 U.S. 236 (1976). "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Meachum*, 427 U.S. at 228, *cited in Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995). As a consequence, Plaintiff's allegations that he was wrongfully transferred to a prison in the Upper Peninsula fail to state a due process claim.

### 3.      Placement in segregation

To the extent that Plaintiff alleges that Defendants violated his right to due process by relying on false information to classify him, which resulted in his placement in segregation for ten months, he fails to state a claim. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due

-10-

process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant).  The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest.  *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir.1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf.  Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).  Plaintiff wholly fails to allege facts showing that his 10-month placement in segregation was atypical and significant.

### 4.      Loss and destruction of property

Plaintiff complains that, when he was transferred to AMF in the Upper Peninsula, his property was delayed for five days.  He alleges that many of his papers were lost or destroyed, his typewriter was missing, and his television was damaged.  The Court assumes that Plaintiff intends to alleged that Defendants deprived him of his property without due process of law.

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an

-11-

adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff's claim will be dismissed.

-12-

5.      Interference with grievances

Plaintiff complains that Defendant Welton improperly reviewed grievances filed against Welton himself.  He further alleges that the remaining Defendants did not properly investigate his grievances.

Plaintiff has no due process right to file a prison grievance.  Courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). In sum, because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

## B.      First Amendment

Plaintiff contends that, after his fight with the other prisoner, Defendant Welton pulled him from his cell, confined him, and berated him for fighting and embarrassing Welton, after Welton had previously vouched for Plaintiff.  Welton threatened to see to it that Plaintiff was

-13-

returned to STG-II status and sent back to a Level-5 facility. When Plaintiff subsequently learned that Defendant Welton had succeeded in having Plaintiff reclassified as STG-II and confinement level VI, he filed a grievance. When Welton learned of the grievance, he had Plaintiff taken from his cell and placed in a cage. Welton then told Plaintiff that he should drop his grievance, because Welton would review any grievance and no one else would help Plaintiff. Plaintiff contends that Welton's conduct was retaliatory. Plaintiff also alleges that Welton violated his First Amendment right to seek redress of grievances by improperly investigating and responding to Plaintiff's grievances against Welton himself.

1.     Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

To the extent that Plaintiff complains that Welton's conduct in completing the form to identify Plaintiff as STG II, he wholly fails to demonstrate that he was engaged in protected conduct at the time Welton took the adverse action. While the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation, *see Smith*

-14-

*v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001), Plaintiff did not file his first grievance until June 6, 2013, nearly a week after Welton threatened to redesignate Plaintiff and after Defendants Travelbee and Brown approved the redesignation on May 31, 2013.  According to Plaintiff's own allegations, Welton took the action to reclassify Plaintiff in order to punish Plaintiff for fighting and embarrassing Welton, who had previously spoken for Plaintiff, not to punish Plaintiff for filing a grievance.  Fighting is not protected conduct under the First Amendment.

Plaintiff next complains that Welton chastised him and ranted at him after Plaintiff filed a grievance.  Welton allegedly told Plaintiff that his grievance would do no good, because no one would help Plaintiff and the action to make him STG-II was final.

Plaintiff's allegations about Welton's yelling fail to rise to the level of adverse action. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).  A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results).  However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations.  *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.  Here, Welton's language, however unprofessional, threatened only that Welton would review the grievance against him, likely causing the grievance to be ineffectual.  Such a threat is so *de minimus* that it would not have deterred a person of ordinary firmness from filing another grievance.

-15-

Finally, although Plaintiff alleges that some of his property was missing when it arrived at AMF, Plaintiff does not allege that Welton or any other Defendant was involved in the packing and shipping of his property at the time of his transfer.  In fact, Plaintiff claims only to have talked to the unit supervisor at that time.

In sum, Plaintiff fails to allege facts that support a First Amendment retaliation claim.

### 2.      Right of redress

The Petition Clause of the First Amendment guarantees the right "to petition the Government for a redress of grievances."  U.S. CONST. amend. I.   The Sixth Circuit long has recognized that a prisoner has an "undisputed First Amendment right to file grievances against prison officials on his own behalf."  *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999).   As a consequence, a prisoner may not be subjected to retaliation for filing a grievance.  *Id.*  However, this right does not encompass the right to a particular grievance procedure or to a favorable result.  As the Court previously discussed, the Sixth Circuit and other circuit courts repeatedly have held that there is no constitutionally protected right to an effective prison grievance procedure.  *Walker,* 128 F. App'x at 445; *Argue*, 80 F. App'x at 430; *Young,* 30 F. App'x at 569-70; *Carpenter,* 2000 WL 190054, at *2; *see also Antonelli*, 81 F.3d at 1430; *Adams*, 40 F.3d at 75.

Here, neither Welton nor any other Defendant interfered with the filing of Plaintiff's grievance.  In addition, as previously discussed, Plaintiff was not subjected to actionable retaliation for filing any grievance.

### C.      Equal Protection

Plaintiff alleges that Defendants denied him equal protection when they reclassified Plaintiff to STG-II and changed Plaintiff's confinement level to Level V.  The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998).  In addition, the Court previously has held that no fundamental right was implicated by Defendants' alleged conduct.

Plaintiff's claim therefore is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).  To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's allegations of discrimination are wholly conclusory.  Plaintiff does not dispute that he is a leader of a security threat group and that he had only recently been designated

-17-

to STG-I after spending many years in Level V housing with an STG-II designation.  He admits that, while he was on STG-I status, he punched another prisoner multiple times in the face with a closed fist with the intent to cause injury.  Under these circumstances, regardless of whether another determination could have been made, a clear rational basis existed for returning Plaintiff to STG-II.  He identifies no similarly situated person who was treated differently.  To be a similarly situated member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the decisionmaker's] treatment of them for it.'"  *Umani v. Michigan Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 586 (6th Cir. 1992).  In the absence of any allegations concerning comparative prisoners, Plaintiff fails to state an equal protection claim.

### D.     State-Law Claims

To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction.  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."  *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.  *Id.*  Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v.*

*Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

### E.    Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989). Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606.

Because Plaintiff's action fails to state a claim, his motion to appoint counsel will be denied as moot.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss Plaintiff's motion to appoint counsel (docket #3) as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the

$505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

      This is a dismissal as described by 28 U.S.C. § 1915(g).

      A Judgment consistent with this Opinion will be entered.


Dated: October 26, 2015          /s/ Janet T. Neff
                            Janet T. Neff
                            United States District Judge